```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | Consolidated Under |
| LIABILITY LITIGATION (No. VI) | : | MDL DOCKET NO. 875 |
| | : | |
| | : | |
| TIMOTHY AND CAROLINE VEST | : | |
| | : | |
| | : | |
| v. | : | Civil Action No. 11-cv-63520 |
| | : | |
| | : | |
| | : | Transferred from the Northern |
| VARIOUS DEFENDANTS | : | District of California |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              MAY 25, 2011

Before the Court is Plaintiffs' Motion to Remand (doc. no. 4) and removing Defendant, McDonnell Douglas Corporation's, Response (doc. no. 13.)

I.  **BACKGROUND**

Plaintiff, Timothy Vest, was diagnosed with mesothelioma in October of 2009.  (Pl.'s Mot., doc. no. 4, at 5.) Caroline Vest is Plaintiff Timothy Vest's wife.  Together, Timothy Vest and Caroline Vest are referred to as "Plaintiffs."

Plaintiffs filed the instant action in California Superior Court on December 17, 2009.  Id.  Timothy Vest alleges that various Defendants' asbestos-containing products caused his injuries, which he was exposed to while present at Hangar 110,

1

where his father, Warren Vest, worked from 1973-1983. (Pl.'s Mot., doc. no. 4, at 5.) Timothy Vest asserts that he was present at Hangar 110 often, and additionally, that his father brought home asbestos on his clothing and person, and therefore that he was exposed to asbestos both at the worksite and in the home. (Id. at 7.) Plaintiffs assert that Defendant McDonnell Douglas Corporation ("MDC") manufactured airplanes that contained asbestos, which were present at Hangar 110.

On January 28, 2010, Plaintiffs amended their complaint to add Defendant MDC, alleging that asbestos-containing components on MDC planes were a substantial contributing factor to Mr. Vest's asbestos-related injuries. MDC filed the notice of removal at issue on January 6, 2011, almost a year after being added to the action. The basis of MDC's removal is the federal officer removal statute, 28 U.S.C. § 1442(a)(1), as MDC asserts that it has a "colorable" government contractor defense for any claims related to military aircraft, namely the KC-10 and B-23, that were present at Hangar 110. See Hagen v. Benjamin Foster Co., No. 07-63346, 2010 WL 3745297 at *20 (E.D. Pa. Sept. 24, 2010) (Robreno, J.)(finding that removal is appropriate under Section 1442(a)(1) when "defendant identifies facts which, in the light most favorable to the defendant, entitle him or her to a complete defense.").

Plaintiffs advance two grounds for remand. First,

Plaintiffs assert that Defendant's notice of removal was untimely, and alternatively, Plaintiffs now waive any claims for exposure to asbestos on military aircraft, purportedly removing the federal officer basis for federal jurisdiction.

**II. ANALYSIS**

    A.  <u>Timing for Removal</u>

The timeliness of removal is an issue of federal law. In the context of a Multidistrict Litigation case, issues of federal law are governed by the law of the circuit in which the MLD court sits. <u>In Re Asbestos Prods. Liab. Litig.</u> ("Oil Field Cases"), 673 F.Supp. 2d 358, 362 (E.D. Pa. 2009).

The timing for removal is controlled by 28 U.S.C. § 1446. Section 1446 states that an action that is not removable on the face of the pleadings may be removed "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one in which is or had become removable . . . ." The first thirty-day window for removal is only triggered when "the four corners of the pleading . . . informs the reader, to a substantial degree of specificity, [that] all the elements of federal jurisdiction are present." <u>Foster v. Mutual Fire Marine & Island Ins. Co.</u>, 986 F.2d 48, 53 (3d Cir. 1993) <u>rev'd on other grounds</u>, <u>Murphy Bros.,</u>

Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999).

When removal is based on the federal officer removal statute, the thirty-day window is not triggered until plaintiff provides facts to support all four prongs of the federal officer removal statute.[1] Durham v. Lockheed Martin Corp., 445 F.3d 1247 (9th Cir. 2006); see also Barnes v. Various Defendants, 10-67141, 2011 WL 925414 at *2 (E.D. Pa. Mar. 16, 2011)(Robreno, J.)("[d]efendant does not have a basis for removal until the nexus between [p]laintiff's claims and actions allegedly taken by [d]efendant under the direction of a federal officer [is] established").

In Durham, the Ninth Circuit Court of Appeals held that the case was not removable until plaintiff's answers to interrogatories revealed, for the first time, that plaintiff was

---

[1] The federal officer removal statute requires a showing that (1) defendant is a person within the meaning of the statute; (2) the conduct at issue occurred while defendant was "acting under" the direction of a federal office; (3) defendant has a colorable federal defense; and (4) there is a causal nexus between plaintiff's claims and acts performed under color of federal office. 28 U.S.C. § 1442(a)(1); Jefferson County v. Acker, 527 U.S. 423, 431 (1999).

The colorable federal defense at issue is the government contractor defense, which shields a company from liability for a defective equipment if it can be shown that (1) the United States approved reasonably precise specifications for the equipment; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States. Boyle v. United Tech. Corp., 487 U.S. 500, 512 (1988).

4

alleging exposure to the SR-71 Blackbird and C-141 Starlifter, for which defendant asserted a federal officer defense. The court held that:

> Until [plaintiff] revealed which aircraft he had worked on during his Air Force career, [defendant] couldn't assert either that its actions were taken pursuant to a federal officer's directions, or that it had a colorable federal defense. Id. at 1251.

Defendant in Durham manufactured various products, some of which were related to government contracts and some of which were purely commercial products. Until the military products were specifically identified, defendant had no basis for removal. Similarly, in Barnes, this Court held that the thirty-day window was not triggered until plaintiff's interrogatories identified that the specific product at issue were defendant's turbines on naval ships; merely naming the defendant, general equipment and identifying the Naval yard worksite in the complaint was insufficient. Barnes, 2011 WL 925414 at *2.

Therefore, in the instant case, the inquiry is when the record revealed that the allegations against MDC satisfied the federal officer removal statute, showing that: (1) MDC was acting under the direction of a federal office with respect to the military planes at issue; (2) MDC has a colorable government contractor defense based on the military specifications for the planes; and (3) there is a causal nexus between Timothy Vest's asbestos-related injuries and MDC's military planes. Once facts

5

supporting these three points were revealed, MDC was obligated to file a notice of removal within thirty days.

Plaintiffs do not contend that the case was removable on the face of the complaint. However, Plaintiffs assert that Mr. Vest's exposure to asbestos on military aircraft was revealed during discovery, "as early as June 2010 and no later than August 2010," and therefore MDC's Defendant was far outside the thirty-day window provided by 28 U.S.C. § 1446. (Pl.'s Mot., doc. no. 4, at 5.) MDC responds that Mr. Vest's exposure to asbestos on military aircraft was not revealed until Plaintiffs' Response to MDC's Motion for Summary Judgment, and that MDC removed within one week of Plaintiffs' Response. (Def.'s Resp., doc. no. 13, at 6.)[2]

B. MDC's Triggering Event

MDC asserts that three witnesses were disclosed in Plaintiffs' Reponse to MDC's Motion for Summary Judgment which,

---

[2] Plaintiffs speculate that MDC only sought to remove the case after an adverse ruling by the state court, and that MDC's removal is merely an attempt to delay trial and "deny Timothy Vest his right as a living plaintiff to recover substantial pain-and-suffering damages." (Pl.'s Mot. to Remand, doc. no. 4, at 5.) MDC responds that "Plaintiffs' counsel actively concealed Plaintiffs' military aircraft claims in the hopes of ambushing MDC at trial." (Def.'s Resp., doc. no. 13, at 6.) Of course, the motivations of the parties are irrelevant to the question before the Court. The only relevant issue is at what point in the litigation did the facts making the case removable come to light.

for the first time, revealed the removability of the case.
First, the testimony of expert witness John Templin, industrial
hygienist, who discussed "re-entrainment," which is the movement
of asbestos fibers in the air. (Def.'s Opp., doc. no. 13, at 12 ¶
14)(citing Declaration of John Templin, doc. no. 8-1)("In sum,
the respirable asbestos fibers that are released into the air
will remain in the air for some time before they alight on
surfaces.  Those fibers, once they do come to rest, are then
subject to re-entrainment.") Defendant asserts that the theory
that <u>all</u> aircraft maintenance at Hangar 110 could have
contributed to Mr. Vest's asbestos-related injuries was
introduced for the first time by John Templin's "re-entrainment"
theory, and that this was the "linchpin for triggering [their]
right to removal."  (Def.'s Opp., doc. no. 13, at 13.)  MDC is
essentially asserting that the third prong of the federal officer
removal test, the causal nexus requirement, was not established
prior to John Templin's testimony.

However, John Templin's declaration does not provide
any new factual information about the case, but merely relies on
the already-developed factual record from the depositions
completed in the case.  There is no specific discussion of
military aircraft in John Templin's declaration.  MDC's averment
that John Templin's general testimony regarding the nature of the
way that asbestos fibers move through the air, for the first
time, put them on notice of a potential government contractor

defense is unavailing. While his declaration might have buttressed Plaintiff's theory of the case, both <u>Durham</u> and <u>Barnes</u> stand for the proposition that specific military product identification is the linchpin of federal officer removal in the asbestos context. It would run counter to the very idea of "colorability" and liberal removal standards if a defendant was expected to wait until a plaintiff's expert testimony regarding causation put together all of the pieces of the puzzle before it could remove. Therefore, John Templin's testimony summarizing the evidence and explaining general principles of asbestos exposure did not trigger the thirty-day removal window.

Second, MDC points to the depositions of David Miller and Michael Pociecha, which were apparently taken after Plaintiff's Response to Defendant's Motion for Summary Judgment was filed. (Def.'s Opp., doc. no. 13, at 13.) The relevant portions of the depositions highlighted by Defendant to support its proposition are as follows:

> **Deposition of Michael Pociecha, January 4, 2011 (doc. no. 23-9):**
>
> A.    I think that's all I can remember offhand, oh, except for Daly's bomber.[3] I can't even remember what kind it was. And we had a DC-3 in there, too. (220:1-3.)
>
> ...
>
> Q:    Okay. Sounds like a good-looking plane. Did you observe anyone do maintenance work on that particular

---

[3] "Daly's bomber" refers to a privately-owned B-23 bomber that belonged to Edward Daly, the owner of World Airways.

bomber?

A: Yeah, There was mechanics that would work on it.

Q: Is it fair to say there were mechanics who worked on other – all planes you mentioned, including the military planes?

A: Yes. (220:16-221:24.)

...

Q: Back to Mr. Daly's bomber for just another minute. I'm sorry. Did you observe maintenance work being done on the bomber? And I apologize if I've asked this already.

A: Yes, I did.

Q: What type of work did you observe being done on the bomber?

A: I'm not familiar with what aircraftwork mechanicalwise is being done, although I seen the engine being worked on and also the landing gear and all that kind of thing. He actually had one particular mechanic who – I can't recall his name – was the main mechanic for that plane. Actually, when Mr. Daly flew anywhere, he used to grab that mechanic and take him with him. (235:6-21).

**Deposition of David L. Miller, December 29, 2010 (doc. no. 23-8):**

Q. You mentioned earlier that there were military aircraft being worked on –

A. Yes.

Q. -- at hangar 110.

A. Yes.

Q. You mentioned the KC-10 which had a rope around it. Do you know what type of work was being done on the KC-10?

A. We had a contract to do like heavy checks, like a C check. There's many different types of checks in

aviation. (273:14-19.)

Defendant avers that it did not know of potential exposure to asbestos on military aircraft until these depositions were taken. (Def.'s Opp., doc. no. 13.) It is true that neither Plaintiffs' complaint nor Plaintiffs' answers to interrogatories discussed the KC-10 or the B-23. However, these depositions do not discuss anything specific with respect to Timothy Vest and provide no <u>new</u> information to Defendant that would trigger removal. The fact that MDC-manufactured military planes were present at Hangar 110, and that maintenance was performed on them, was established in the record as early as August 19, 2010, roughly six months prior to Defendant's removal, during the course of Warren K. Vest's deposition.[4] The relevant portions are as follows:

> A: ...We [Timothy and Warren Vest] used to fly in it [Mr. Daly's airplane].
>
> ...
>
> Q: Okay. And by Mr. Daly's airplane, which airplane are you referring to?
>
> A: We had two. We had the conveyor 340 and he had a <u>B-23.</u>
>
> Q: And those were kept parked outside the hangar?
>
> A: Yes.

---

[4] On October 21, 2010, Timothy Vest testified that he recalled Ed Daly's B-23 being present at Hangar 110, but could not recall if maintenance was done on the plane. (Dep. of Timothy Vest, doc. no. 8-7, at 168:13-16.)

Q: And if [Timothy] went on those planes that would have been while he was outside the hangar, correct?

A: Most likely, but they may have had one of them in the airplane – in the hangar for <u>maintenance</u> or something. (124:10-25)(emphasis added).

...

Q: ...Were there aircrafts serviced that belonged to the government?

A: Yes.

Q: Which ones were those?

A: The <u>KC-10</u> and the E-4, which is the 747. (146:24-147:4)(emphasis added.)

...

Q: ...When you were assistant vice president of flight operations and executive – and senior vice president of flight operations and executive vice president, did you delegate that task to the chief engineer?

A: Normally we would –- our offices were right next together, so a lot of times we would just walk out there together to see what the progress, because the maintenance people had a big obligation to the military, and sometimes they would get priority. So we were always concerned that our aircraft were getting done on time. So you go out there. It might be for five minutes.

Q: Okay. And this you would do then principally when your aircraft were also on the hangar to be -- World Airways aircraft were being serviced at the same time as the military aircraft?

A: Yes.

Q: How often did that occur?

A: Probably every day.

Q: Every day in the course of these years from 1976 to 1985?

11

A: Yeah. (151:15-152:12.)

Based on the above, the depositions of Michael Pociecha and David L. Miller contained no <u>new</u> information about Timothy Vests's potential exposure to asbestos from MDC's military aircraft at Hangar 110. Warren Vest had previously testified that maintenance was done on military aircraft along with commercial planes, and that he was present for the maintenance. Timothy Vest's complaint alleged that he was exposed to dust on Warren Vest's clothing, thereby providing the causal nexus between military plane maintenance and Plaintiffs' claims.

Therefore, based on Warren Vests's earlier testimony, Defendant's assertion that Plaintiffs' Response to its Motion for Summary Judgment and corresponding depositions for the first time triggered a right to removal is not persuasive.

### III. CONCLUSION

As Defendant did not remove the case within thirty days from the date on which the case became removable Plaintiffs' motion to remand will be granted.

An appropriate order follows.